IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

TAMMIE F.,                          )
                                    )
    Plaintiff,                     )
                                    )
v.                                  )          No. 25-cv-02136-TMP
                                    )
FRANK J. BISIGNANO,                 )
COMMISSIONER OF SOCIAL              )
SECURITY ADMINISTRATION,            )
                                    )
    Defendant.                     )

---

### ORDER AFFIRMING THE COMMISSIONER'S DECISION

---

On February 10, 2025, Tammie F. ("Plaintiff") filed a Complaint seeking judicial review of a Social Security decision.[1] (ECF No. 1.) Plaintiff seeks to appeal the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II disability benefits. (ECF No. 17 at PageID 18.) For the following reasons, the decision of the Commissioner is AFFIRMED.

## I.    BACKGROUND

On June 27, 2020, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of

---

[1] After the parties consented to the jurisdiction of a United States magistrate judge on September 30, 2024, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 9.)

the Social Security Act ("Act"), 42 U.S.C. §§ 404-434 (ECF No. 10 at PageID 18.) The application, which alleged an onset date of March 2, 2012, was denied initially as well as upon reconsideration. (Id.) Plaintiff then requested a hearing, which was held before an Administrative Law Judge ("ALJ") via telephone on August 30, 2022. (Id.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Plaintiff was not disabled for the purposes of receiving Title II benefits. (Id. at PageID 20.) The ALJ also noted Plaintiff last met the insured status requirements of the Act on June 30, 2015. (Id.) At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity between the alleged onset date of March 2, 2012, and her date last insured of June 30, 2015. (Id.) At the second step, the ALJ concluded that Plaintiff had the following severe impairments: "chronic obstructive pulmonary disease, obstructive sleep apnea, rheumatoid arthritis, and spine disorder (20 CFR 404.1520(c))." (Id. at PageID 20.) Plaintiff also alleged that she has anxiety, but the ALJ concluded there was "no objective medical evidence or diagnostic testing to support this impairment" and therefore "does not consider this condition to be a medically determinable impairment during the relevant period." (Id. at PageID 21.)

At the third step, the ALJ concluded that through the date last insured, Plaintiff's impairments did not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at PageID 22.) As to the spine disorder and rheumatoid arthritis, the ALJ posited

> [Plaintiff's impairments] do not meet listings 1.15, 1.16, or 1.18. There is no evidence indicating that the claimant cannot perform fine and gross movements with at least one upper extremity due to a combination of extremity-related limitations and the use of a medically necessary mobility device. For example, [Plaintiff] was not noted to have any gait abnormalities or use an assistive device during the relevant period and the evidence does not establish that she could not perform fine or gross movements with at least one upper extremity.

(Id. at PageID 21.) As to Plaintiff's chronic obstructive pulmonary disease, the ALJ found

> [t]he record provided fails to establish the FEV1, FVC, DLCO, arterial PaO2 and PaCO2, or SpO2 levels required under listing 3.02(a)-(c). Furthermore, there is no evidence that [Plaintiff] has had exacerbations or complications requiring three hospitalizations within a twelve-month period and at least thirty days apart, as defined in 3.02D. (1F; 2F; 3F; 4F; 5F; 6F; 8F; 9F; 10F; 11F; 13F; 14F). Given this evidence, [Plaintiff's] chronic obstructive pulmonary disease neither meets nor medically equals listing 3.02 [for chronic respiratory disorders due to any cause except cystic fibrosis].

(Id.) As to the rheumatoid arthritis evaluation, the ALJ stated

> the evidence fails to demonstrate the requisite inflammation, deformity, ankylosing spondylitis, spondyloarthropathy, or marked limitations in activities of daily living, social functioning, or ability to complete tasks in a timely manner due to deficiencies in

- 3 -

concentration, persistence, or pace. (e.g. 1F 12, 14, 16, 18-19, 24; 3F 26-28; 6F 9-11, 13-18, 20- 27, 147).

(Id. at PageID 21-22.) Finally, the ALJ considered the potential impact of obesity on Plaintiff's impairments and found

there is no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning. Therefore, [Plaintiff's] obesity does not meet or equal a listing. [Plaintiff's] weight, including the impact on her ability to ambulate as well as her other body systems, has been considered within the limitations of the claimant's residual functional capacity described below.

(Id. at PageID 22.)

Accordingly, the ALJ then had to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ concluded that Plaintiff

had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she could frequently balance, handle, finger, and feel. She could perform tasks that require occasional climbing of ramps and stairs and occasional stooping, kneeling, and crouching. She could perform tasks that did not require climbing ladders, ropes, or scaffolds; working at unprotected heights; working with hazardous machinery; crawling; or exposure to pulmonary irritants.

(Id. at PageID 22.) Pursuant to 20 C.F.R. § 404.1567(a), sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and

standing is often necessary in carrying out job duties." 20 C.F.R.
§ 404.1567(a).

In reaching the RFC determination, the ALJ discussed
Plaintiff's testimony and the medical evidence in the record. The
ALJ concluded that Plaintiff's "medically determinable impairments
could reasonably be expected to cause the alleged symptoms;
however, [Plaintiff]'s statements concerning intensity,
persistence and limiting effects of these symptoms are not entirely
consistent with the medical evidence and other evidence in the
record for the reasons explained in this decision." (Id. at PageID
23.)

Next, the ALJ considered the medical opinions and prior
administrative medical findings. Regarding Dr. Thrush and Dr.
Chaudhuri, the State agency's medical consultants at the initial
consideration and reconsideration stages respectively, the ALJ
determined from both doctors' opinions that

> [Plaintiff's] rheumatoid arthritis was severe but that
> there was insufficient evidence to determine her
> functional limitations prior to her date last insured .
> . . . are otherwise not persuasive, given that while
> they are supported by the explanation of the evidence
> the consultants considered in determining the
> [Plaintiff's] functional limitations, they are
> inconsistent with the record available at the time of
> this decision . . . . evidence establishes that
> [Plaintiff's] COPD, obstructive sleep apnea, rheumatoid
> arthritis, and obesity were severe impairments during
> the relevant period and that there was sufficient
> evidence to determine her related functional
> limitations.

(Id. at PageID 25-26.) With regard to Dr. Wright and Dr. Khaleeli, the State agency psychology consultants, the ALJ found in her decision that

> there is insufficient evidence to determine whether [Plaintiff] had any mental impairments prior to her date last insured . . . . The undersigned finds this opinion to be persuasive, given it is supported by the explanation of the evidence the consultants considered in determining the [Plaintiff's] functional limitations and consistent with the record available at the time of this decision. Although [Plaintiff] occasionally reported being anxious or nervous, she was frequently cooperative or pleasant with an appropriate mood and affect, normal behavior, and normal thought content. Additionally, [Plaintiff's] examiners did not consistently note any confusion, distractibility, forgetfulness, or inattentiveness. Further, the available records from the relevant period do not include a diagnosis of any mental impairments or treatment notes pertaining thereto.

(Id. at PageID 26.) Regarding the opinion of Dr. Wilons, Plaintiff's pulmonologist, the ALJ "[did] not find this opinion to be persuasive, given that it is not supported by Dr. Wilons's treatment notes," "that it is inconsistent with the record available at the time of this decision," that it "addresses a matter reserved to the Commissioner," and that "it is unclear whether the proposed functional limitations were intended to [reflect] the claimant's current abilities or her abilities as of her date last insured." (Id.) Regarding the opinion of Dr. Holt, Plaintiff's rheumatologist, the ALJ also "[did] not find this opinion to be persuasive, given that it is neither supported by Dr. Holt's treatment notes during the relevant period nor

- 6 -

consistent with the record available at the time of this decision."
(Id. at PageID 27.) The ALJ also considered Plaintiff's own
testimony in relation to the medical evidence, finding that her
"statements about the intensity, persistence, and limiting effects
of her symptoms are inconsistent." (Id. at PageID 23.)

At step four, the ALJ concluded that Plaintiff could not
perform any of her past relevant work. (Id. at PageID 28.)
Plaintiff previously worked as a cleaner, which the ALJ noted
required a medium exertional level. (Id.) The ALJ relied on the
testimony of the vocational expert that Plaintiff would be unable
to perform the requirements of this job. (Id.)

At step five, the ALJ concluded that, based on Plaintiff's
age, education, work experience, and RFC, there were jobs that
existed in significant numbers in the national economy that she
could perform. (Id. at PageID 29.) The ALJ noted that Plaintiff
was 48 years old at the time of her date last insured, that she
had at least a high school education, and that the transferability
of her job skills was not an issue because her past relevant work
was unskilled. (Id.) At the hearing, the vocational expert
testified that, based on Plaintiff's age, education, work
experience, and RFC, she could perform the jobs "document
preparer," "cutter/paster," and "addresser," for which there were
19,000, 11,800, and 20,000 jobs available nationwide,
respectively. (Id.) Accordingly, the ALJ concluded that Plaintiff

could make a successful adjustment to other work existing in significant numbers in the national economy, and that Plaintiff was not disabled. (Id. at PageID 42.)

On April 9, 2025, the ALJ issued a decision detailing the findings summarized above. The Appeals Council denied Plaintiff's request for review. (Id. at PageID 1.) Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner under § 1631(c)(3) of the Act. On appeal, Plaintiff argues that the ALJ failed to account for the total limiting effects of Plaintiff's impairments when evaluating her RFC, and that the ALJ failed to articulate the consistency and supportability factors under 20 C.F.R. § 416.920c when evaluating the medical opinion and prior administrative medical opinion evidence.

## II. ANALYSIS

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which they were a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial

evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rollins v. Comm'r of Soc. Sec., No. 24-1180, 2025 WL 2710577, at *3 (W.D. Tenn. Sept. 23, 2025). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389 (1971)); see also Moats v. Comm'r of Soc. Sec., 42 F.4th 558, 561 (6th Cir. 2022).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)); Foltz obo R.B.K.F. v. Comm'r of Soc. Sec., No. 23-3362, 2023 WL 7391701, at *3 (6th Cir. Nov. 8, 2023). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989));

see also Marquitta B. v. Comm'r of Soc. Sec. Admin., No. 23-cv-1276, 2025 WL 959946, at *8 (W.D. Tenn. Mar. 31, 2025). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)); Floyd v. Comm'r of Soc. Sec., No. 23-2036, 2024 WL 3103757, at *1 (6th Cir. June 24, 2024). Instead, the Commissioner, not the court or external medical providers, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); see also Robbins v. Comm'r of Soc. Sec., No. 24-3201, 2024 WL 4603964, at *4 (6th Cir. Oct. 29, 2024).

B.    **The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Id. § 423(d)(2). Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011); Dameon W. v. O'Malley, 24-cv-1072, 2025 WL 880255, at *5 (W.D. Tenn. Mar. 21, 2025). The initial burden is on the claimant to prove she has a disability as defined by the Act. Napier v. Comm'r of Soc. Sec., 127 F4th 1000, 1003 (6th Cir. 2025) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Napier, 127 F.4th at 1003; Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the

claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). Next, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). Third, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See id. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. Id.

On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See id. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of "not disabled" must be entered. Id. If, however, the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See id. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. Id. § 404.1520(a)(4).

**C.    Plaintiff's RFC**

Plaintiff first argues that the ALJ's RFC finding is not supported by substantial evidence because it fails to consider the "total limiting effects of all [her] impairments and limitations." (ECF No. 13 at PageID 5.) RFC is defined as "the most [an individual] can still do despite [their] limitations." 20 C.F.R. § 404.1545. According to Plaintiff, the ALJ's RFC evaluation ignored an important aspect that the ALJ herself acknowledged: right before Plaintiff's date last insured expired in June 2015, she experienced exacerbation of rheumatology and pulmonary impairments that lasted several months after the expiration of her insured status. (ECF No. 13 at PageID 4-5.) Plaintiff argues the ALJ also impermissibly relied on her own lay opinion after finding not only Drs. Holt and Wilons's opinions but also the State Agency administrative findings unpersuasive, "crafting. . . [the RFC opinion] from raw medical data which even the [] summary of the record shows is a mixed set of normal and abnormal findings, as against treating experts who were viewing the same data." (ECF No. 13 at PageID 5.) Plaintiff also argues that "a [vocation expert ("VE")]'s testimony that is premised on a defective (i.e., inaccurate) RFC finding is not substantial evidence supporting an ALJ's denial." (Id.) In response, the Commissioner argues that the ALJ's evaluation of the record as a whole is proper and gives appropriate weight and deference to both medical evidence and subjective symptoms within the relevant time period. (ECF No. 15

- 13 -

at PageID 10.) The Commissioner claims that, ultimately, Plaintiff "simply did not like the ALJ's final conclusions" and that the court may not "resolve conflicts in evidence or decide questions of credibility." (Id. at PageID 11.)

The court finds that the ALJ's decision is supported by substantial evidence. In reaching her determination, the ALJ specifically relied upon Plaintiff's treatment records and statements to her health care providers. (ECF No. 10 at PageID 24-25, 26-27.) Indeed, the ALJ focused on an electrodiagnostic study in April 2013 and records from Plaintiff's doctors visits in February 2014 with Dr. Holt, April 2014 with Dr. Wilons, August 2014 with both Dr. Wilons and Dr. Holt, October 2014 with her primary care physician, as well as an October 2016 examination slightly beyond the relevant period. (Id.)

In each of these records, Plaintiff presented more normal symptoms than not, and the respective doctors did not flag any severe cause for concern. The April 2013 study found that her lower extremities were essentially normal with "[no] evidence of lumbosacral radiculopathy, plexopathy, or myopathy" and no electrodiagnostic findings significant enough for a finding of sensory neuropathy. (Id. at PageID 2597.) The ALJ noted that the "available record does not include any treatment notes, medical imaging, diagnostic testing, or statements from her treatment

providers between her April 2012 hospitalization [and her]
February 2014 rheumatology examination." (Id. at PageID 23-24.)

At Plaintiff's February 2014 visit, Dr. Holt found her chest
was clear and her breathing was stable, she could raise both
shoulders fully; her hands were nontender without swelling,
synovitis, or cyanosis; she had a full range of motion and no
tenderness or swelling in her wrists, elbows, and knees. (Id. at
PageID 2598.) Based on this examination, Dr. Holt determined that
Plaintiff's rheumatoid arthritis was stable with her current
treatment regime and conservative treatment was continued. (Id.)
At Plaintiff's April 2014 doctor visit, Dr. Wilons determined that
she had an increasing airflow obstruction, but that there were no
other significant musculoskeletal, neurological, or other physical
abnormalities. (Id.) He had also noted that Plaintiff had no
respiratory tract infections, was compliant with her CPAP usage,
and had steadily lost weight in the prior year. (Id.)

At her August 2014 appointment, Dr. Wilons observed that
Plaintiff had continued to lose weight, had improved exercise
tolerance, was much more active and less short of breath, and had
no significant pulmonary or other physical abnormalities. (Id. at
PageID 2599.) During a follow-up in the same month, Dr. Holt
indicated in his notes that she was "generally well overall" with
weight loss and stable breathing. (Id.) Plaintiff denied all
symptoms and was found to have "demonstrated significant

improvement." (Id. at PageID 2600.) Although Plaintiff complained of abdominal tenderness and swelling during her primary care appointment in late 2014, she later confirmed at a follow-up rheumatology appointment in December 2014 that she was "doing pretty well overall," so Dr. Holt continued her current regimen. (Id.) Plaintiff continued her doctors' visits throughout 2015 with varying degrees of relapse and improvement reported. (Id. at PageID 2601-02.) However, at the October 2016 examination, Dr. Wilons found

> she had lost 5 or 6 pounds and repeat pulmonary function test confirmed some mild improvement with vital capacity results just below the lower range of normal and only mild reduction in the FEV1/FEVC ration with more significant mid-expiratory slowing. [Plaintiff] maintained a diagnosis of "mild" restrictive and obstructive lung disease and was recommended to stay on medications and continue using nighttime oxygen to avoid heart strain due to nocturnal desaturation, although . . . daytime oxygenation was not an issue. She was recommended continued weight loss to improve pulmonary function and hip and knee function.

(Id. at PageID 2602-03 (internal citations omitted).) The ALJ evaluated that this appeared to indicate only a minor downturn since the medical evidence suggested she "frequently had no other significant musculoskeletal, neurological, or pulmonary abnormalities." (Id. at PageID 25.) Since Plaintiff has not provided sufficient facts to explain how the ALJ's RFC findings were defective, the VE's opinion that the ALJ relied upon to determine her ability to work was valid.

Plaintiff's arguments to the contrary are not persuasive. First, Plaintiff discounts the objective medical evidence the ALJ relied upon by emphasizing Plaintiff's decline at the end of the relevant period and expecting the ALJ to extrapolate additional decline beyond the scope of the relevant period in her decision. However, the ALJ still relied upon objective medical evidence, as she was required to do. Plaintiff essentially invites the court to impermissibly reweigh the evidence. Health conditions can not only decline over time but also improve, so the ALJ was not required to base her decision solely upon a period of decline that began when Plaintiff's insurance expired. Second, although Plaintiff's own statements may occasionally suggest lower capacity that the ALJ's final decision, the ALJ was "not required to accept [Plaintiff's] subjective complaints." Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476-77 (6th Cir. 2003); see also Sorrell v. Comm'r of Soc. Sec., 656 F. App'x 162, 169 (6th Cir. 2016). The ALJ may assess Plaintiff's credibility, especially where she feels Plaintiff's statements are not consistent with objective medical evidence. Jones, 336 F.3d at 476. An ALJ's decision "is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997) (citing Crum,

921 F.2d at 644). Accordingly, the court finds that there is
substantial evidence to support the RFC determination.

As part of contesting the argument regarding RFC generally,
Plaintiff also contends that when the ALJ's assessment conflicts
with opinions from medical sources, they must explain why that
source opinion was not adopted. This evaluation of persuasiveness
uses factors of consistency and supportability, which will be
addressed below.

**D.   Consistency and Supportability**

Plaintiff argues that the ALJ violated the mandatory evidence
evaluation criteria of 20 C.F.R. § 416.920c. (ECF No. 13 at PageID
6-17.) 20 C.F.R. § 416.920c states, in relevant part:

> (a)  How  we  consider  medical  opinions  and  prior
> administrative medical findings. We will not defer or
> give  any  specific  evidentiary  weight,  including
> controlling weight, to any medical opinion(s) or prior
> administrative medical finding(s), including those from
> your medical sources. When a medical source provides one
> or more medical opinions or prior administrative medical
> findings, we will consider those medical opinions or
> prior administrative medical findings from that medical
> source together using the factors listed in paragraphs
> (c)(1) through (c)(5) of this section, as appropriate.
> The most important factors we consider when we evaluate
> the persuasiveness of medical opinions and prior
> administrative  medical  findings  are  supportability
> (paragraph (c)(1) of this section) and consistency
> (paragraph (c)(2) of this section). We will articulate
> how  we  considered  the  medical  opinions  and  prior
> administrative medical findings in your claim according
> to paragraph (b) of this section.
> (b)  How  we  articulate  our  consideration  of  medical
> opinions and prior administrative medical findings. We
> will  articulate  in  our  determination  or  decision  how
> persuasive we find all of the medical opinions and all

of the prior administrative medical findings in your
case record. Our articulation requirements are as
follows:

> ...

> (2) Most important factors. The factors of
> supportability (paragraph (c)(1) of this section) and
> consistency (paragraph (c)(2) of this section) are
> the most important factors we consider when we
> determine how persuasive we find a medical source's
> medical opinions or prior administrative medical
> findings to be. Therefore, we will explain how we
> considered the supportability and consistency factors
> for a medical source's medical opinions or prior
> administrative medical findings in your determination
> or decision. We may, but are not required to, explain
> how we considered the factors in paragraphs (c)(3)
> through (c)(5) of this section, as appropriate, when
> we articulate how we consider medical opinions and
> prior administrative medical findings in your case
> record.

> ...

(c) Factors. We will consider the following factors when
we consider the medical opinion(s) and prior
administrative medical finding(s) in your case:

> (1) Supportability. The more relevant the objective
> medical evidence and supporting explanations
> presented by a medical source are to support his or
> her medical opinion(s) or prior administrative
> medical finding(s), the more persuasive the medical
> opinions or prior administrative medical finding(s)
> will be.

> (2) Consistency. The more consistent a medical
> opinion(s) or prior administrative medical finding(s)
> is with the evidence from other medical sources and
> nonmedical sources in the claim, the more persuasive
> the medical opinion(s) or prior administrative
> medical finding(s) will be.

20 C.F.R. § 416.920c. Plaintiff argues that the ALJ failed to

properly explain the supportability and consistency factors for

- 19 -

Drs. Holt and Wilons's opinions, as well as Plaintiff's own statements. (ECF No. 13 at PageID 16-18.) In response, the Commissioner maintains that Plaintiff's expectation for the opinions of her medical doctors to substitute the ALJ's RFC determination is without legal justification, and that Plaintiff is essentially asking the court to impermissibly reweigh the evidence in her favor. (ECF No. 15 at PageID 7-8.)

*1. Dr. Holt*

In her written decision, the ALJ's discussion of Dr. Holt's medical determinations reads as follows:

> In November 2013, Dr. Holt determined that [Plaintiff] was permanently and totally disabled from gainful employment. However, this opinion goes to an issue reserved to the Commissioner and does not provide any specific functional limitations. Therefore, this opinion is defined as evidence that is inherently neither valuable nor persuasive and it will not be considered further. In March 2021, Dr. Holt determined that since April 2013, [Plaintiff] could not lift and carry five pounds on a frequent basis; could stand and walk for less than an hour each, during which she would require breaks lasting fifteen minutes each; could sit for less than an hour, during which she would require a fifty-five minute break; would need to elevate her legs; would need to take unscheduled breaks every fifteen minutes; can never stoop, and rarely bend, reach, and handle; had a restricted ability to reach overhead as well as restricted use of all her extremities; would have impaired concentration resulting in her being off-task 80% of the workday; would be absent four or more days of the month and could not work; and is affected by cold, heat, dust, pollen, wetness, humidity, vibration, fumes, odors, gases, poor ventilation hazardous machinery, heights, and other allergies. (10F 5-12). The undersigned does not find this opinion to be persuasive, given that it is neither supported by Dr. Holt's treatment notes during the relevant period nor

> consistent with the record available at the time of this
> decision. Dr. Holt observed that [Plaintiff] was
> morbidly obese, had persistent edema and a rash in her
> legs, was on a course of maintenance steroids, was
> receiving treatment for her pulmonary impairments,
> complained of chronic joint pain, and had intermittent
> swelling or tenderness in her hands, fingers, wrists,
> elbow, and knees. However, Dr Holt did not note any gait
> abnormalities or use an assistive device, noted that
> [Plaintiff] frequently had a full range of motion in her
> joints, and determined that [her] rheumatoid arthritis
> had significantly improved and generally remained stable
> with occasional adjustments to her medications and
> continued weight loss.

(Id. at PageID 27 (internal citations omitted).) Plaintiff argues
that Dr. Holt's opinion shows the causes of pain were severe enough
such that daily activities were "significantly affected, despite
aggressive treatment." (ECF No. 13 at PageID 10.) However, the
Commissioner counters that when describing the objective findings,
Dr. Holt cites to examinations beyond the relevant period, which
may "only be 'minimally probative' as to [Plaintiff's] condition
during the insured period." (ECF No. 15 at PageID 6, quoting Emard
v. Comm'r of Soc. Sec., 953 F.3d 844, 850 (6th Cir. 2020)).
Further, the Commissioner points out that Dr. Holt's opinion was
inconsistent with the evidence from other medical sources, which
showed "largely unremarkable respiratory, musculoskeletal, and
neurological findings and only modest abnormalities on pulmonary
function testing, all well managed with conservative treatment."
(Id. at PageID 7.) Finally, the Commissioner argues that the

- 21 -

responsibility for determining RFC rests with the ALJ, not a physician. (Id. at PageID 8.)

At the outset, ALJs are not required to expressly use the words "supportability" or "consistency." See, e.g., Christopher B. v. O'Malley, No. 123CV00028GNSLLK, 2024 WL 112499, at *2 (W.D. Ky. Jan. 10, 2024) (citing Darling v. Kijakazi, No. 22-35594, 2023 WL 4103935, at *2 (9th Cir. June 21, 2023); Adams v. Kijakazi, No. 1:21CV2199, 2023 WL 2347368, at *10 (N.D. Ohio Mar. 3, 2023); Ebeling v. Comm'r of Soc. Sec., No. 5:21-CV-00115-TBR-LLK, 2022 WL 3006209, at *3 (W.D. Ky. July 8, 2022)) (adopting report and recommendation of the magistrate judge). The ALJ's opinion indicates consideration of both factors. Her discussion highlights instances where Dr. Holt's conclusions were not supported by his own examination findings, including his conclusion that Plaintiff had mobility limitations without reporting any abnormalities in her gait or range of motion, as well as determining that her condition generally improved and remained stable with occasional adjustments to medication and continued weight loss. (ECF No. 10 at PageID 27.) The ALJ also highlighted instances where Dr. Holt's conclusions were inconsistent with the medical record, including that Dr. Holt concluded Plaintiff had limited reach and "[limited] use of all her extremities" where her other examiners did not note such abnormalities. (Id.)

Plaintiff does not clarify exactly how the ALJ failed to explain the consistency and supportability factors when evaluating Dr. Holt's opinion against other medical evidence or his own observations within the relevant period. Meanwhile, the Commissioner has provided sound arguments explaining how the ALJ could have found Dr. Holt's opinion unpersuasive. Thus, the court finds that the ALJ adequately explained consistency and supportability.

*2. Dr. Wilons*

In her written decision, the ALJ found that Dr. Wilons's opinion was not persuasive, stating that

> it is not supported by Dr. Wilons's treatment notes, that it is inconsistent with the record available at the time of this decision, that it addresses a matter reserved to the Commissioner, and that it is unclear whether the proposed functional limitations were intended to [Plaintiff's] current abilities or her abilities as of her date last insured.

(ECF No. 10 at PageID 26.) Discussing Dr. Wilons's evaluation, the ALJ wrote that

> Dr. Wilons noted that [Plaintiff] was morbidly obese with chronic obstructive pulmonary disease and obstructive sleep apnea, had swelling in her lower extremities, and that her PFTs worsened when she did not have access to her medications or was not adherent to her recommended diet and exercise programs. However, Dr. Wilons frequently did not note any significant pulmonary or other physical abnormalities, stated [Plaintiff] had had few if any respiratory tract infections, was compliant with her CPAP usage, and that her symptoms improved and responded well to weight loss and adherence to her prescribed treatments.

(Id.) The ALJ also explained how Dr. Wilons's conclusions were not consistent with other examiners because, although they determined Plaintiff was "obese with COPD and sleep apnea, persistent swelling and a rash in her lower extremities, and intermittent joint swelling and tenderness secondary to her rheumatoid arthritis," they also frequently noted "not significant pulmonary or neurological abnormalities, did not note any gait abnormalities or use of an assistive device, and determined that her symptoms generally remained stable." (Id.)

Once again, Plaintiff did not clarify exactly how the ALJ failed to explain the consistency and supportability factors when evaluating Dr. Wilons's opinion against other medical evidence or his own observations within the relevant period. The ALJ has indeed discussed the specific evidence that Dr. Wilons relied upon in explaining why Dr. Wilons's opinion was not persuasive. Thus, the court finds that the ALJ adequately explained consistency and supportability.

### 3. Plaintiff's Statements

The ALJ found the Plaintiff's statements to be inconsistent with the record. Her decision notes that "[a]lthough the evidence supports the conclusion that the [Plaintiff's] COPD, obstructive sleep apnea, obesity, rheumatoid arthritis, and spine disorder create exertional, postural, and environmental limitations, these limitations are not as severe as alleged by [Plaintiff]. (Id. at

- 24 -

PageID 27.) Plaintiff argues that the court's reliance on her ability to perform daily activities is not substantial evidence to deny benefits. (ECF No. 13 at PageID 18-19.) The Commissioner refutes this with evidence that the ALJ considered the record regarding Plaintiff's symptoms, complaints, and conflicting medical evidence in addition to her daily activities. (ECF No. 15 at PageID 12.)

The court finds that the ALJ appropriately considered the combination of factors. It is not the court's role to reweigh the evidence and interfere when "there is a zone of choice within which the decisionmakers can go either way." Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009). The court also does not "resolve conflicts in evidence, nor decide questions of credibility" related to Plaintiff's statements about her own symptoms or limitations. Garner, 745 F.2d at 387. The ALJ explained that Plaintiff's activity levels align with the sedentary RFC classification because she is able to frequently have a normal range of motion capable of performing daily tasks, such as helping care for her disabled husband, caring for pets, driving and shopping at the grocery store, preparing simple meals, going outside, and performing personal care. (ECF No. 10 at PageID 23.) Combined with the observations of medical providers and consultants, the ALJ interpreted Plaintiff's condition as stable

during the relevant insured period. Because of this, the court finds no error and affirms the ALJ's RFC determination accordingly.

### III. CONCLUSION

For the reasons described above, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

October 9, 2025
Date